**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | |
|     THOMAS W. OLICK, | : | Chapter 13 |
|         Debtor | : | |
| | : | Bky. No. 07-10880(ELF) |
| _____ | : | |
| | : | |
| THOMAS W. OLICK, | : | |
| | : | |
|     Plaintiff, | : | |
| | : | |
|     v. | : | Adv. No. 07-052 |
| | : | |
| JAMES KEARNEY, <u>et al.</u>, | : | Adv. No. 07-060 |
| | : | |
|     Defendants. | : | |
| | : | |

# M E M O R A N D U M

## I.  INTRODUCTION

Before me is a dispute regarding the amount of costs to be taxed in favor of a plaintiff who has accepted an Offer of Judgment under Fed. R. Bankr. P. 7068 from one of the defendants in the above adversary proceedings.

In February 2007, Plaintiff Thomas W. Olick ("Mr. Olick") initiated two (2) separate adversary proceedings in this court against Defendants Knights of Columbus ("the Knights"), James Kearney, Thomas Jenkins (the Knights, Kearney and Jenkins referred to collectively as "the Knights Defendants") and Aetna Life Insurance Co. ("Aetna").  The adversary proceedings were later consolidated for trial.

In March 2008, the court granted in part and denied in part the respective summary judgment motions of the Knights Defendants and Aetna, dismissing Jenkins as a party defendant

1

and dismissing a number of Mr. Olick's claims.  Shortly thereafter, Mr. Olick accepted an Offer

for Judgment Aetna tendered.

Although Mr. Olick and Aetna resolved the merits of claims raised in these adversary

proceedings, they were unable to agree on the costs to be taxed under Fed. R. Bankr. P. 7054.

This (hopefully) last dispute between Mr. Olick and Aetna has generated several lengthy written

submissions by the parties and an evidentiary hearing.  By the time this matter was taken under

advisement, Mr. Olick's demand for taxation of costs had risen to $40,151.44.

For the reasons set forth below, I will deny most of Mr. Olick's request for taxation of

costs.  Costs will be taxed in the amount of $1,349.50.


## II.  FACTUAL BACKGROUND TO THE LITIGATION

Prior to the initiation of the adversary proceedings, the parties engaged in litigation

involving the same claims in the U.S. District Court for the Eastern District of Pennsylvania.  The

District Court litigation generated a reported decision, Olick v. Kearney, 451 F.Supp.2d 665

(E.D. Pa. 2006) ("the District Court Case"), in which the Defendants' motions to dismiss the

complaint were granted in part and denied in part.

The existence and disposition of the District Court Case is relevant to the dispute between

Mr. Olick and Aetna regarding allowable costs and in Part III.A, infra, I will further discuss the

District Court Case.  In the meantime, I quote a passage from the District Court Case because it

provides a concise summary of the underlying factual background of the dispute among the

parties:

2

In June 1995, Plaintiff Thomas Olick entered into an employment contract ("the Contract") with Defendant Knights of Columbus ("Knights") whereby Knights authorized Plaintiff to sell its insurance products to members of five Knights of Columbus Councils.  Shortly after signing the Contract, Plaintiff became eligible for and purchased group health insurance for his wife and children from Defendant Aetna Life Insurance Company ("Aetna"). Plaintiff paid all required premiums for this insurance until February 15, 2006.

Beginning in February 2005, Plaintiff's relationship with Knights, and especially with Defendant James Kearney ("Kearney"), Knights' general agent, began to sour. Plaintiff alleges that, over the next year, Defendants Knights and Kearney reduced Plaintiff's sales territory without reducing his sales quota, and acted in numerous other ways to sabotage his sales efforts (e.g., by withholding information regarding Plaintiff's territory, failing to inform Plaintiff of his customers' overdue premiums, punishing Plaintiff for his opposition to illegal sales practices, and refusing to approve policies written by Plaintiff).  Plaintiff further alleges that Knights improperly reduced his commissions on two occasions, and that Defendant Thomas Jenkins ("Jenkins"), a fellow Field Agent for Knights, unlawfully took over his former sales territory and interfered with his sales efforts.

Despite these clashes with his colleagues and superiors, Plaintiff claims that he was never formally terminated, and thus never became ineligible for his group health insurance. Yet the COBRA Notice (dated February 28, 2006) that Plaintiff received from Knights on March 1, 2006 indicates that Plaintiff was fired on November 1, 2005. In any case, Plaintiff alleges that after March 1, 2006, Defendant Aetna informed Plaintiff that he and his family were no longer covered and refused to pay more than $3,000 in medical bills that should have been covered by his group health insurance plan. Soon thereafter, Plaintiff appealed Aetna's claims decisions orally and in writing, but received no response.

Id. at 669-70 (citations to the record omitted) (footnote omitted).

### III.  PROCEDURAL HISTORY

The procedural history of the litigation between Mr. Olick and Aetna that culminated in the Rule 7068 Judgment in the above adversary proceeding is germane to the issues before me. Therefore, I will describe that history in some detail.

3

**A.  The Court of Common Pleas Case and the District Court Case**

On February 15, 2006 Mr. Olick filed a complaint in the Court of Common Pleas, Northampton County against the Knights and an individual defendant, James Kearney.  In that Complaint, Mr. Olick asserted claims for breach of contract, age discrimination, breach of fiduciary duty, job discrimination and negligence.  On March 13, 2006, before Defendants Knights and Kearney responded to the Complaint, Mr. Olick amended the Complaint to add Aetna as a Defendant.  In the state court litigation, and in all of the litigation in federal district court and in this court, Mr. Olick has acted pro se.

On April 11, 2006, Aetna, with the consent of the Knights and Kearney, removed the state court action to federal court, thereby commencing the District Court Case, referenced in Part II, supra.[1]  Subsequently, Mr. Olick again amended the Complaint to add another individual defendant (Thomas Jenkins). On September 11, 2006, the District Court granted in part, and denied in part, the respective Motions to Dismiss of Defendants Kearney, Jenkins and Knights and Defendant Aetna.   See Olick v. Kearney, 451 F.Supp.2d at 680-81.

On November 29, 2006, Aetna served an Offer of Judgment on Mr. Olick pursuant to Fed. R. Civ. P. 68 ("the Rule 68 Offer").  The Rule 68 Offer provides, in its entirety:

---

[1]        The District Court Case was docketed at No. 06-1531.  On January 10, 2007, Mr. Olick filed another Complaint in the District Court against the same defendants.  The second district court action was docketed at No. 07-0121.  The docket in the second action reflects that it was consolidated for trial with the removed action and that the District Court exported all of the pretrial deadlines from first action into the second action.  (Compare District Court Case No. 06-1531,  Docket Entry No. 162, with District Court Case No. 07-0121, Docket Entry No. 5, 8).  Therefore, for ease of reference, I will refer collectively to both actions in the singular as "the District Court Case."

Pursuant to Federal Rule of Civil Procedure 68, Defendant Aetna Life Insurance Company submits this Offer of Judgment in full and complete satisfaction of your claims against Aetna, including reasonable costs accrued to date in connection with your claim as against Aetna, such amount to be agreed upon by the parties or determined by the Court's normal procedure for costs should the parties fail to reach such agreement.

Pursuant to the Judgment, Aetna will retroactively deem that the member eligibility status for health benefits coverage under the Knights of Columbus health benefits plan ("the Plan") is in place for the period from November 1, 2005 through March 1, 2006, for you, as well as for Kathryn Olick, David Olick and Matthew Olick even though they are not parties to this action.  Accordingly, benefits claims for that period will be considered to be in the eligible status for coverage pursuant to the terms of the Plan as if there had been no termination as of November 1, 2005.  Also, Aetna will not seek reimbursement from you, your dependants [sic] and your/their providers for benefits Aetna has previously paid for that period.  To the extent Aetna may have already recovered from providers any such amounts if paid as benefits, Aetna will reimburse those providers such amounts as if coverage under the Plan was effective for that time period.  Aetna will also reimburse you and your dependants [sic] for out-of-pocket expenses incurred during that time period for prescriptions and/or services which would have been covered as benefits under the Plan had coverage been in effect from November 1, 2005 through March 1, 2006, upon specific showing of such expenses.

Mr. Olick did not accept the Rule 68 Offer.

On February 13, 2007, Mr. Olick filed a motion under Fed. R. Civ. P. 41 to voluntarily dismiss the District Court Case.  At that time, the deadline for completion of discovery was February 26, 2007 and trial was scheduled for April 2, 2007.[2]  Over the Defendants' objections,[3] the District Court granted Mr. Olick's Rule 41 motion and dismissed the District Court Case on February 20, 2007.

---

[2]     See District Court Case No. 06-1531 (Docket Entry No. 162);   District Court Case No. Docket Entry No. 07-0121 (Docket Entry No. 5).

[3]     I use the term "the Defendants" to refer collectively to the Knights Defendants and Aetna.

5

**B.  The Adversary Proceedings in the Bankruptcy Court**

### 1.  proceedings prior to the court's ruling on summary judgment

Meanwhile, on February 9, 2007, four (4) days before filing the Rule 41 motion in the

District Court Case, Mr. Olick commenced a chapter 13 bankruptcy case in this court, docketed

at Bky. No. 07-10880.  On February 21, 2007, the day after the dismissal of the District Court

Case, Mr. Olick filed an adversary complaint in this court against the Defendants, docketed as

Adv. No. 07-052.[4]  On February 28, 2007, Mr. Olick filed a second adversary complaint in this

court against the Defendants, docketed as Adv. No. 07-060.[5]  The two (2) adversary complaints

asserted the same claims as those set forth in the District Court Case.

In this court, with the consent of the parties, the two (2) adversary proceedings were

consolidated for trial under Adv. 07-60 by orders dated May 31, 2007.  I will refer to the

consolidated proceedings as "the AP."

Both the Knights Defendants and Aetna filed motions to dismiss the AP.  On June 26,

2007, I issued an order granting in part, and denying in part, the Defendants' motions.  <u>See</u> AP

Docket Entry No. 73. In effect, the June 26th Order narrowed the claims in the AP to those that

had survived the motions to dismiss in the District Court Case (in the reported decision cited

---

[4]    The First Adversary Complaint is 27  pages long, containing 247 paragraphs.  It sets forth two "counts:" one for "discrimination and retaliation" and the other for "job discrimination."

[5]    The second adversary complaint is 39 pages long, containing 363 paragraphs.  It sets forth five (5) counts: (1) violations of ERISA and COBRA; (2) breach of contract; (3) tortious interference in business and contracts; (4) breach of contract; and (5) breach of contract and conversion.  Only Counts I and IV were directed against Aetna.

above) and renumbered them for clarity's sake in the consolidated proceeding.  The surviving

claims, as renumbered, were:

| | |
|---|---|
| Count I  – | Discrimination and Retaliation (against Knights, Kearney and Jenkins) |
| Count II – | Job Discrimination (against the Knights and Kearney) |
| Count III A.  – | COBRA, Sections 502(a)(1)(A) and § 606(a)(4)[6] (against the Knights) |
| III B.  – | ERISA, Section 502(a)(1)(B) (against Aetna) |
| III C.  – | ERISA, Section 502(a)(3)(B) (against the Knights and Aetna) |
| Count IV – | Breach of Contract (against the Knights and Kearney) |
| Count V – | Tortious Interference with Contract (against the Knights, Kearney and Jenkins) |
| Count VII – | Breach of Contract and Conversion (against the Knights) |

Also, the advanced stage of the pretrial process in the District Court Case prior to its

dismissal led me to adopt a particular case management philosophy for the AP.  Specifically, I

treated the AP as a proceeding designed to "complete" the prior litigation (i.e., the District Court

Case) that was near disposition (by summary judgment and/or trial) at the time of Mr. Olick's

voluntary dismissal under Rule 41.[7]  For this reason, I issued a pretrial order that limited the

---

[6]    The acronym COBRA refers to the Consolidated Omnibus Budget Reconciliation
Act of 1985, which amended the Employee Retirement Income Security Act of 1974 ("ERISA"),
29 U.S.C. §§1001 et seq.  Sections 502 and 606(a)(4) of ERISA are codified at 29 U.S.C.
§§1132 and 1166, respectively.

[7]    I note that during the pretrial proceedings in the AP, I considered the scope of this
court's jurisdiction and, after reviewing the terms of Mr. Olick's proposed chapter 13 plan, I
determined that the AP was a "related proceeding" under 28 U.S.C. §1334(b).  All of the parties
then consented to the entry of judgment by the bankruptcy court in the AP.  See 28 U.S.C.

discovery process to the completion of discovery that was outstanding in the District Court Case

at the time of its dismissal.[8]  The Pretrial Order also provided a deadline for the filing of

dispositive motions after the completion of discovery.

The Knights Defendants and Aetna filed timely motions for summary judgment on August

24, 2007.  After extensive briefing by the parties, on March 17, 2008, I delivered a lengthy bench

opinion, followed by an order granting in part and denying in part each summary judgment

motion.  As to Aetna, the March 17th Order provided:

> 5.  The Aetna Motion is **DENIED** as to Count III.B. (claim under Section
> 502(a)(l)(B) of ERISA alleged against Defendant Aetna).
>
> 6.  The Motion is **GRANTED IN PART AND DENIED IN PART** as to Count
> III.C. (for an equitable claim under Section 502(a)(3)(B) of ERISA alleged
> against Defendants Knights and Aetna) as follows:
>
>> a.  The Motion is **GRANTED** and judgment is entered in favor of
>> Defendants Knights and Aetna on Plaintiff's equitable claim for premiums.
>>
>> b.  The Motion is **DENIED** on the Plaintiff's equitable claim alleged against
>> Defendant Knights for the failure to convert his life insurance policy.

See AP Docket Entry No. 242.[9]

---

§157(c)(2).

[8]    The discovery process in the District Court Case was extremely contentious, the
parties having filed multiple motions to compel discovery.  As of the date the District Court Case
was dismissed: (1) several motions to compel had been granted; (2) only a few days remained
before the discovery deadline and (3) there was outstanding discovery owed to all of the parties.
The purpose of the Pretrial Order that I issued was to permit the parties time to enforce the
District Court's discovery orders.

[9]    As to the Knights Defendants, I dismissed all of Mr. Olick's claims except: (1) his
claim that he had been dismissed in retaliation for asserting an age discrimination claim and (2) his
COBRA/ERISA claim under §§502(a)(1)(A) and 606(a)(4), 29 U.S.C. §§1132(a)(1)(A),

## 2.  Rule 7068

Shortly after the summary judgment decision in the AP, Mr. Olick and Aetna reached a

settlement.  The settlement is memorialized in two (2) documents:

> (1) an Offer of Judgment Pursuant to Fed. R. Bankr. P. 7068 ("the Rule 7068
> Offer)[10] dated April 23, 2008 that Aetna submitted to Mr. Olick and that he
> countersigned on April 26, 2008, see AP Docket Entry No. 256; and

> (2) an Order dated May 21, 2008, entered after a hearing held to resolve disputes
> between the parties regarding the terms and effectiveness of the Rule 7068 Offer.
> See AP Docket Entry No. 272.

The first document, the Rule 7068 Offer, states, in its entirety:

> Pursuant to Bankruptcy Rule of Procedure 7068, Defendant Aetna Life
> Insurance Company submits this Offer of Judgment in full and complete
> satisfaction of your claims against Aetna in this action, including reasonable costs
> accrued to date in connection with your claim against Aetna, such amount to be
> agreed upon by the parties or determined by the Court's normal procedure for
> costs should the parties fail to reach such agreement.

> Pursuant to the Judgment, Aetna will retroactively deem that the member
> eligibility status for health benefits coverage under the Knights of Columbus health
> benefits plan ("the Plan") is in place for the period from November 1, 2005
> through March 1, 2006, for you, as well as for Kathryn Olick, David Olick and
> Matthew Olick even though they are not parties to this action.  Accordingly, with
> respect to the services and prescriptions reflected in Exhibit "A," to the extent
> such services or prescriptions would have been covered as benefits under the Plan
> had there been no termination of eligibility as of November 1, 2005, such services
> and prescriptions will be considered to be in the eligible status for coverage
> pursuant to the terms of the Plan as if there had been no termination of eligibility as
> of November 1, 2005. These Plan benefits would not include fees or expenses for
> which the member (i.e., you and/or Kathryn, David or Matthew) is responsible
> under the Plan, such as co-pays.

---

1166(a)(4).  The dismissal of Mr. Olick's age discrimination claim is presently the subject of a
motion for reconsideration that is under advisement.

[10]     Fed. R. Bankr. P. 7068 incorporates Fed. R. Civ. P. 68 by reference in adversary
proceedings.

> If and to the extent you and/or Kathryn Olick, David Olick and Matthew Olick already paid the providers for the prescriptions and/or services identified in Exhibit "A" upon specific showing of each such payment, Aetna will reimburse you (or, Kathryn, David or Matthew, as the case may be) to the extent such services or prescriptions otherwise would have been covered as benefits under the Plan had coverage been in effect from November 1, 2005 through March 1, 2006. Again, these Plan benefits would not include fees or expenses for which the member (i.e., you and/or Kathryn, David or Matthew) is responsible under the Plan, such as copays.

AP Docket Entry No. 256.

The second document, the Order dated May 21, 2008, arose from Aetna's concern that the settlement was not legally binding because Mr. Olick**'s** acceptance of the Offer was ambiguous or conditional. To resolve those concerns, Aetna filed a motion to strike what it characterized as "impertinent material" from Mr. Olick's acceptance.  See AP Docket Entry No. 261.  At the hearing held on that motion on May 21, 2008, Mr. Olick unambiguously accepted the Rule 7068 Offer on the record.  As a result, by agreement, the court entered the May 21, 2008 Order striking from the record the material that Aetna considered objectionable.  See AP Docket Entry No. 272.

### 3.  Costs

Mr. Olick's acceptance of the Rule 7068 Offer did not terminate the conflict between parties.  Shortly after Mr. Olick's acceptance of the Rule 7068 Offer, a dispute arose concerning Mr. Olick's entitlement to reimbursement of his costs in the litigation between the parties.  As a result, on May 5, 2008, Mr. Olick filed a motion styled as a "Motion to Determine Costs Associated with Judgment Against Defendant Aetna" ("the Costs Motion").

The court addressed the subject of costs in its May 21, 2008 Order, the same Order that

10

resolved the Rule 7068 dispute.  That Order provides, <u>inter alia</u>:

> 3.  The Offer of Judgment and Acceptance thereof is without prejudice to the Plaintiff's right, if any, to recover costs under Fed. R. Bankr. P. 7054.
>
> 4.  The dispute between the parties relating to the Plaintiff's right to recover cost shall be determined through the adjudication of the Plaintiff's Motion to Determine Costs Associated with Judgment Against Defendant Aetna docketed at Docket Entry No. 258.

AP Docket Entry No. 272.

On May 21, 2008, the court issued a separate Order that: (a) required Mr. Olick to file an itemized statement of the costs he was requesting be allowed by June 6, 2008; (b) required Aetna file a response by June 20, 2008; and (c) scheduled a hearing on July 14, 2008.[11]  Mr. Olick and Aetna made the submissions the court required.

The "Itemization" that Mr. Olick filed on June 6, 2008, consisted of a twelve (12) page memorandum accompanied by a six (6) page Exhibit.  <u>See</u> AP Docket Entry No. 289.  The Memorandum contains legal argument devoted partially to a reiteration of Mr. Olick's complaints about Aetna's conduct both prior to and during the litigation and partially to the reasons why Mr. Olick believes he is entitled to allowance of all of the types of "costs" that he has claimed.  The

---

[11]     This is not the procedure for the taxing of costs set forth under Fed. R. Bankr. P. 7054.  Rule 7054 provides in relevant part:

> Costs may be taxed by the clerk on one day's notice; on motion served within five days thereafter, the action of the clerk may be reviewed by the court.

By entering an order altering the procedure set forth in Rule 7054, which allowed the parties to bypass the step of requesting that the Clerk tax costs in the first instance, I exercised my discretion and authority to modify the procedures set forth in the rules in order to "secure the just, speedy and inexpensive determination of every case and proceeding."  Fed. R. Bankr. P. 1001.

11

real quantification of Mr. Olick's demand is found in the Exhibit.  There, Mr. Olick requested the

allowance of costs in the total amount of  $18,951.44, which may be summarized as follows:[12]

| | |
|---|---|
| federal express and postage | 1,269.09[13] |
| travel expenses for attending court hearings and depositions | 1,484.98[14] |
| reimbursement for sanctions imposed by the court | 2,000.00 |
| PACER | 188.96 |
| state court filing and service fees | 163.00[15] |
| other/miscellaneous | 166.42[16] |
| appeal fee | 255.00 |
| photocopies of pleadings, motions and photocopying of exhibits for depositions | 4,419.25[17] |
| court reporter fees for eleven (11) depositions | 9,003.84 |

---

[12]     Mr. Olick attached a table to his June 6, 2008 submission that summarized his request.  See AP Docket Entry No. 289 (Exhibit).  For the sake of brevity and clarity, I have combined some of the entries set forth in the table.

[13]     The federal express component is $97.34 and the postage is $1,171.75.

[14]     The amounts requested are for parking expenses, tolls and reimbursement for mileage at $0.41/mile.

[15]     This consists of $105.00 for the filing fee and $58.00 for the fee for service.

[16]     This consists of notary fees ($10.00), a line item called "bnk cpy fee" ($29.00), a line item called "dep. service" ($99.00) and a line item called "ERISA  - ERISA Code book" ($28.42).

[17]     Mr. Olick differentiates between photocopies of pleadings and motions ($2,513.25) and photocopies of exhibits for depositions ($1,906.00).

On July 14, 2008, prior to the commencement of the hearing, Mr. Olick filed an additional submission that he called a "Sur Reply" to Aetna's opposition. <u>See</u> AP Docket Entry No. 309. The Sur Reply consists of thirty-five (35) pages of argument, accompanied by eight (8) exhibits. The Sur Reply was marked and admitted into evidence at the hearing on the Costs Motion, which was held and concluded on July 14, 2008.

In the Sur Reply, Mr. Olick increased his costs demand by $21,200.00. In addition to the costs identified in his June 6, 2008 submission, Mr. Olick also claimed entitlement to costs in the nature of "ERISA penalties" of $100 per day for 212 days.[18] <u>See</u> Olick Sur Reply at 8. This request, when combined with his prior request, brought Mr. Olick's total costs demand to $40,151.44.

At the July 14th hearing, neither party called any witnesses. The record is entirely documentary, Mr. Olick having moved five (5) exhibits into evidence and Aetna having moved

---

[18]      <u>See</u> 29 U.S.C. §1132(c)(1):

> Any administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section 1166 of this title, section 1021(e)(1) of this title or section 1021(f), or section 1025(a) of this title with respect to a participant or beneficiary, or (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, each violation described in subparagraph (A) with respect to any single participant, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, shall be treated as a separate violation.

twenty (20) exhibits into evidence.  At the conclusion of the hearing I took the matter under

advisement.


## IV.  DISCUSSION

### A.  Applicable Legal Principles

The legal authority for taxation of costs in this adversary proceeding is both statutory and

rule-based.

Fed. R. Bankr. P. 7054(b) sets forth the general principle that a bankruptcy court "may

allow costs to the prevailing party except when a statute of the United States or these rules

otherwise provides."  (emphasis added).

As a threshold matter, the party seeking costs bears the burden of proof.  To meet this

burden, the party must make a sufficient record by documenting the costs with enough specificity

to permit the court to evaluate the merits of the request.  In re Northwestern Corp., 326 B.R.

519, 530 (Bankr. D. Del. 2005), aff'd, 369 B.R. 775 (D. Del. 2007); accord Rohrbough v. Univ.

of CO Hosp. Auth., 2008 WL 1840723, at *1 (D. Colo. Apr. 22, 2008); In re Northlake Dev.,

LLC, 2008 WL 782495, at *5 (Bankr. S.D. Miss. Mar. 20, 2008);  In re Clansy, 2008 WL

177779, at *4 (Bankr. S.D. Tex. Jan. 18, 2008).

Rule 7054(b) differs from its counterpart under the rules of civil procedure, Fed. R. Civ.

P. 54(b), which provides that unless a statute provides otherwise, courts "should" allow costs to

the prevailing party.  Making note of the difference between the bankruptcy rule and the civil rule,

many courts have held that the decision to award costs under Bankruptcy Rule 7054(b) is wholly

within the bankruptcy court's discretion.  See, e.g., In re Clansy 2008 WL 177779, at *3

14

(collecting cases); accord In re Gioioso, 979 F.2d 956, 962 (3d Cir. 1992) ("Bankruptcy Rule

7054(b) permits a bankruptcy court, in its sound exercise of discretion, to award costs to a party

prevailing in an adversary proceeding").[19]  In exercising that discretion, some courts have

considered such factors as whether the prevailing party incurred unnecessary costs or

unnecessarily multiplied the proceeding or (if the costs are assessable against the debtor) the

debtor's financial ability to pay the costs of the prevailing party.  See In re Aviva Gelato, Inc.,  94

B.R. 622, 624 -25 (9th Cir. 1988), aff'd, 930 F.2d 26 (9th Cir. 1991) (Table).  In this Circuit, the

Court of Appeals has not had occasion to identify the standards that should be employed.  See In

re S.S., 271 B.R. 240, 248 (Bankr. D.N.J. 2002).

Under Rule 7054, the exercise of the court's discretion is subject to the proviso that costs

are not allowed if an applicable rule or statute "provides otherwise."  The relevant statute in this

adversary proceeding does not "provide otherwise" so as to override Rule 7054's general rule.

Indeed, the statute is consistent with the general rule.  Section 502(g)(1) of ERISA, 29 U.S.C.

§1132(g)(1), states that "[i]n any action under this subchapter [subject to an exception not

relevant here], the court in its discretion may allow a reasonable attorney's fee and costs of action

to either party."  (emphasis added).  See, e.g., Hahnemann Univ. Hosp. v. All Shore, Inc., 514

F.3d 300, 312 (3d Cir. 2008) ("Section 1132(g)(1) of ERISA gives a District Court discretion to

award 'costs' in addition to attorney's fees").

---

[19]    One court has traced the difference between the civil rules and the bankruptcy
rules back to practice under the prior Bankruptcy Act.  See In re Sweere, 1985 WL 660785
(Bankr. D.N.D. July 19, 1985).  The Advisory Committee Note to Fed. R. Bankr. P. 754, the
predecessor of Rule 7054 stated that the rule "preserve[d] the traditional approach of leaving the
taxation of costs in such proceedings to the [bankruptcy ] court's discretion."  13 Collier on
Bankruptcy ¶754.01 (14th ed. 1977) (quoting Advisory Committee Note).

In determining the costs that may be taxed, I must also consider §1920 of the Judicial

Code, 28 U.S.C. §1920.  Section 1920 lists the costs that are taxable by the court:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and copies of papers necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Section 1920 limits the court's discretion with respect to the types of costs that may be

allowed.  To the extent that the court determines to tax costs against the losing party, it may

allow only those costs that are authorized by 28 U.S.C. §1920.  E.g., In re Philadelphia Mortg.

Trust,  930 F.2d 306, 307 (3d Cir. 1991) (citing Crawford Fitting Co. v. J.T. Gibbons, Inc., 482

U.S. 437, 107 S.Ct. 2494 (1987)); see also Agredeno v. Mut. of Omaha Cos., 75 F.3d 541, 544

(9th Cir. 1996) (ERISA §502(g)(1)'s "allowance for 'costs of action' empowers courts to award

only the types of 'costs' allowed by 28 U.S.C. § 1920"). [20]

---

[20]     In In re Celotex Corp., 251 B.R. 163, 168 (Bankr. M.D. Fla. 2000), the court opined that under Rule 7054, the discretion accorded to the bankruptcy court "encompass[es] determining which costs are taxable within the context of the Bankruptcy Rule, notwithstanding 28 U.S.C. §1920."  The court further concluded that if the bankruptcy estate (presumably acting through a debtor-in-possession or a trustee) is the prevailing party in a proceeding, the allowable costs should include the expenses reimbursable under 11 U.S.C. §330.  The expenses that are reimbursable under §330 are broader in scope than the costs that are taxable under §1920.  Id. at

Finally, because this case involves a fee-shifting statute, it is significant that Mr. Olick has

proceeded pro se.  As a pro se litigant, he is not entitled to recover reasonable attorney's fees

under 29 U.S.C. §1132(g).[21]  See Kay v. Ehrler, 499 U.S. 432, 111 S.Ct. 1435 (1991); Carnese v.

Standard Ins. Co., 2006 WL 2045104, at *3 (D. Or. July 19, 2006); Boyadjian v. Cigna Cos., 973

F.Supp. 500, 503-04 (D.N.J. 1997).   An award of attorney's fees made pursuant to a fee-shifting

statute may include categories of litigation expenses that are broader than the costs that may be

taxed under 11 U.S.C. §1920.  Because Mr. Olick is pro se, and not entitled to counsel fees, he

may not recover the types of expenses included in an award of counsel fees but not encompassed

by 28 U.S.C. §1920.  See Boyadjian v. Cigna Cos., 994 F.Supp. 278, 281 (D.N.J. 1998) (while

expense for postage is reimbursable as part of an award of attorney's fees, such expense may not

be awarded to pro se party who may not recover attorney's fees); cf. Bowers v. Foot-Wear, Inc.,

2007 WL 4086339, at *5 (M.D. Pa. Nov. 15, 2007) (applying Fed. R. Civ. P. 54(d)(2) to award

non-taxable costs in case in which prevailing party was entitled to award of attorney's fees).


**B.   Certain Categories of Costs in Mr. Olick's Request Will Be Disallowed as Non-
Compensable Under 28 U.S.C. §1920**

Before considering how I should exercise the discretion accorded a bankruptcy court

under Fed. R. Bankr. P. 7054, resolution of this dispute can be simplified by considering Aetna's

---

169.  In this proceeding, it is not necessary to decide this issue.


[21]     Mr. Olick does not claim that he is entitled to attorney's fees.  See generally
Carnese v. Standard Ins. Co., 2006 WL 2045104, at *3 (D. Or. July 19, 2006) (denying counsel
fees to pro se party in ERISA action) (citing Kay v. Ehrler, 499 U.S. 432, 111 S.Ct. 1435
(1991)).

argument that most of the categories of expenses at issue either:

> (1) are not taxable as costs under 28 U.S.C. §1920 as a matter of law and therefore, are not taxable under Fed. R. Bankr. P. 7054; or
>
> (2) Mr. Olick has not met his initial burden of:
>
>> (a) documenting either the amount of the claimed expense and/or
>>
>> (b) establishing that the expense is a type encompassed by §1920 and Rule 7054.

I agree that many of the costs Mr. Olick requested are not taxable for one of the reasons Aetna offered.[22]

## 1.  federal express and postage    ($1,269.09)

Litigation expenses incurred for delivery of communications or documents via the postal service or other carriers is nowhere mentioned as a taxable cost in 28 U.S.C. §1920.  I will follow the numerous courts that have held that such expenses are not taxable costs under Fed. R. Bankr. P. 7054 or Fed. R. Civ. P. 54.  See, e.g., Smith v. Tenet Healthsystem SL, Inc., 436 F.3d 879, 889 (8th Cir.  2006); Hadix v. Johnson, 322 F.3d 895, 900 (6th Cir. 2003); Duckworth v. Whisenant, 97 F.3d 1393, 1399 (11th Cir. 1996); Rivera v. City of Philadelphia, 1998 WL 67538, at *1 (E.D. Pa. Feb. 19, 1998); Boyadjian, 994 F.Supp. at 281; In re Northwestern Corp., 326 B.R. at 529 n.2; see also Bowers, 2007 WL 4086339, at *5 (referring to postage as a nontaxable

---

[22]      It is worth noting that there is an argument that Aetna does not make.  The bulk of the costs at issue were expended in the District Court Case, not in these adversary proceedings. The parties have assumed that costs expended in prior, related litigation may be taxed in this subsequent action.  Given the close relationship between the District Court Case and these proceedings, particularly the functional approach taken of treating the AP as designed to bring the prior litigation to its conclusion, the parties' assumption is not unreasonable.  In any event, I will accept that assumption.

cost under §1920).  But see Tchemkou v. Mukasey, 517 F.3d 506, 512 (7th Cir. 2008).

### 2.  travel expenses for attending court hearings and depositions   ($1,484.98)

The expense that a party pays to a witness who must travel to attend a court hearing or a

deposition, see 28 U.S.C. §1821, may be taxed as a cost.  See, e.g., Smith v. Crown Equip.

Corp., 2000 WL 62314 (E.D. Pa. Jan. 13, 2000).  However, the travel expenses of a successful

pro se litigant are not.  Boyadjian, 994 F.Supp. at 281.

### 3.  reimbursement for sanctions imposed by the court   ($2,000.00)

In this adversary proceeding, I entered two sanction orders against Mr. Olick, each in the

amount of $1,000.00.

The first order, dated September 14, 2007 was entered under Fed. R. Civ. P. 37

(incorporated by reference by Fed. R. Bankr. P. 7037) because Mr. Olick continued in a pattern

of giving vague and evasive responses to Aetna's Interrogatories in violation of an Order

Compelling Discovery issued in this court.  See AP Docket Entry Nos. 131, 142.  The second

order,  dated October 26, 2007, was entered because Mr. Olick's conduct in renewing claims that

had been dismissed with prejudice in the District Court Case and that were barred by the doctrine

of res judicata violated Fed. R. Bankr. P. 9011.  See AP Docket Entry No. 167.

Reimbursement for payment of court awarded sanctions is not authorized by 28 U.S.C.

§1920 and therefore, is not taxable under Fed. R. Bankr. P. 7054.[23]

---

[23]      In the alternative, assuming arguendo, that the sanctions payments are otherwise
taxable under §1920, I exercise my discretion under Rule 7054 to disallow the cost.  As a matter
of public policy, the enforcement of the principles embodied in Rules 11 and 37 outweigh any

### 4.  PACER  ($188.96)

"PACER" is an acronym for "public access to court electronic records," a system by which the public may view court dockets and documents on-line.  Most courts hold that PACER charges are not taxable costs.[24]  Without deciding that legal issue, I conclude that, in this proceeding, Mr. Olick has not established his entitlement to the taxation of his alleged PACER charges as costs under 28 U.S.C. §1920 and Fed. R. Bankr. P. 7054.

I infer from Mr. Olick's request that, at some point, he registered as a PACER user and is asserting that he obtained copies of the docket or documents linked electronically to the court's docket.[25]  Using PACER to obtain copies of documents in the court's electronic file perhaps can be considered the functional equivalent of coming to the courthouse and photocopying documents

_____

equitable basis there might be in this proceeding (and it is virtually impossible to imagine that such a basis exists) to relieve Mr. Olick of his payment obligation.

[24]      Compare Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC, 2007 WL 4326110, at *3 (S.D.N.Y. Dec. 4, 2007) (not taxable); Torres v. Barnhart, 2007 WL 1810238, at *17 (S.D.N.Y. June 25, 2007) (same); Alvarez Perez v. Sanford-Orlando Kennel Club, Inc., 2007 WL 842771, at *10 (M.D. Fla. Mar. 20, 2007) (same); MBNA America (Delaware), N.A. v. Group Ins. Concepts, Inc., 2006 WL 5159182, at *3 (M.D. Fla. May 16, 2006) (treating PACER charges as "computer-assisted research" that is nontaxable under 28 U.S.C. §1920); Bandera v. City of Quincy, 220 F.Supp.2d 26, 48 (D. Mass. 2002) (PACER fees not taxable under §1920), with Ducote Jax Holdings, LLC v. Bank One Corp., 2007 WL 4233683, at *7 (E.D. La. Nov. 28, 2007) (taxable as a fee of the clerk under 28 U.S.C. §1920(1)).

[25]      Mr. Olick did not file any of his documents electronically on the bankruptcy court electronic docket – and even if he had, there are no charges for filing documents.  Except on a few occasions when Mr. Olick  came to the courthouse and delivered hard copies of his papers to the Clerk, he mailed all of his documents to the court.  Upon receipt, the Clerk scanned his papers into the electronic docket.

20

from the paper file that the Clerk maintained prior to implementation of the current Case

Management/Electronic Case Filing System.  In other words, arguably, use of PACER in this

manner is simply the use of a different technology to copy papers.  If so, perhaps PACER charges

may be "[f]ees for ... copies of papers necessarily obtained for use in the case."  28 U.S.C.

§1920(4).

Assuming arguendo that the PACER charges may fall categorically under §1920(4), Mr.

Olick's request must nonetheless be disallowed for two (2) reasons.  First, he has not documented

the expense.  Second, considering that he was served with hard copies of all of the papers filed in

the case (by counsel for the Defendants) and copies of all Orders entered (by the court), there was

no apparent need for Mr. Olick to incur these charges and he has offered no explanation.  Simply

put, he has not met his initial burden of proof on the issue.

### 5.  state court filing fees and service fees

Mr. Olick seeks reimbursement for the $105.00 filing fee he paid in the Court of Common

Pleas, Northampton County when he initiated this litigation on February 15, 2006 and a $58.00

expense for "service."[26]  As stated earlier, the Defendants later removed the state court action to

the District Court and eventually, Mr. Olick voluntarily dismissed the action.

28 U.S.C. §1920 does refer generally to the taxing of "fees of the clerk or marshal."  It

does not state whether the fees of another court may be taxed if the litigation in the removed

court bears a sufficiently close relationship to the case before this court.  However, most courts

---

[26]      I infer that the "service" cost was a fee paid for service of the state court
complaint on the Defendants.  I will assume that it was paid to an entity that is the equivalent of a
federal "marshal" as that term is used in 28 U.S.C. §1920(1).

21

have construed §1920 to preclude the taxing of costs incurred by the prevailing party in state court prior to removal of the action to federal court.  See Pershern v. Fiatallis N. Am., Inc., 834 F.2d 136, 140 (8th Cir. 1987); Sigur v. Emerson Process Mgmt., 2008 WL 1908590 (M.D. La. Feb. 21, 2008), report and recommendation adopted, 2008 WL 1908588 (M.D. La. Apr. 30, 2008); Terry v. Allstate Ins. Co., 2007 WL 3231716, 2 (E.D. Cal. Nov. 1, 2007).  But see Sparks v. Yorzinski, 1994 WL 123619 (D. Kan. Mar. 11, 1994).

I will follow the majority view on this issue  –  that the fees of the Clerk that may be taxed are limited to those incurred in the prevailing party's removal of the case or thereafter paid in the federal court.  Thus, even if I were to treat the proceedings in this court as the equivalent of the now dismissed District Court Case, the state court filing and service fees would not be taxable. This proceeding is even one step further removed from the District Court Case.  For this reason, I conclude that the state court filing fees are not taxable as costs under 28 U.S.C. §1920 and Rule 7054.

### 6.  other/miscellaneous   ($166.42)

Mr. Olick requests that costs be allowed for a notary fee of $10.00.  Mr. Olick has not met his burden of documenting this expense or otherwise explaining why the cost was incurred.

Another miscellaneous cost requested by Mr. Olick is for "ERISA - ERISA Code book" ($28.42).  I infer that this expense may have been incurred in connection with Mr. Olick's fact investigation or legal research.  Mr. Olick has neither documented the expense nor provided an adequate explanation of its purpose.  On its face, it does not appear to be encompassed by 28 U.S.C. §1920.

22

Finally, Mr. Olick has made two requests that I find to be entirely unexplained and unintelligible: the "bnk cpy fee" of $29.00 and the "dep. service fee" of $99.00.

In short, with respect to all of the "other/miscellaneous" costs requested, Mr. Olick has not met his initial burden of documenting the costs and establishing that they are taxable under 28 U.S.C. §1920.  His request for taxation of these costs will be denied.


### 7.  ERISA penalties of $100 per day for 212 days   ($21,200.00)

Mr. Olick's request for taxation of costs of ERISA penalties of $100 per day for 212 days, for a total of $21,200.00 will be denied for two (2) independent reasons.

First, Mr. Olick did not include this request in the Itemization of Costs filed on June 6, 2008 as required by the court's Order dated May 21, 2008.  He raised the issue, belatedly, on the day of the court hearing in his unauthorized Sur Reply.  In these circumstances, I consider it equitable to treat the failure to include this request in the required itemization as a waiver of Mr. Olick's right to seek reimbursement of this alleged "cost."

Alternatively, on the merits, the request for the assessment of a per diem liability as a taxable cost is frivolous.  The request is based on 29 U.S.C. §1132(c), the civil enforcement provision of ERISA.  The assessment of this per diem liability is a substantive remedy for the violation of ERISA and not a "cost" under Fed. R. Bankr. P. 7054.  As such, the requested per diem liability is relief that Mr. Olick has bargained away by his acceptance of the Rule 7068 Offer. The Rule 7068 Offer explicitly states that the offer was made in "full and complete satisfaction of your claims against Aetna in this action."  In accepting the Rule 7068 Offer, Mr. Olick released

Aetna from any §1132 liability not included in the Offer.[27]

## C. In the Exercise of the Discretion Afforded to the Court Under Rule 7054, the Remaining Categories Within Mr. Olick's Request Will Be Disallowed In Large Part

The remaining categories of costs are for varying types of filing fees, photocopying fees and court reporter fees for depositions.  On their face, these requests are the types of expenses that are potentially taxable as costs.  See 28 U.S.C. §1920(1), (2), (4).  As explained below, I will allow only a small portion of the amount Mr. Olick requested.

### 1. appeal fee   ($255.00)

Mr. Olick does not explain the nature of the appeal fee that he requests be taxed as a cost against Aetna.  It appears that he is referring to the filing fee for his appeal of this court's October 26, 2007 Order sanctioning him under Fed. R. Bankr. P. 9011.  See AP Docket Entry Nos. 167,

---

[27]     Throughout this litigation, Mr. Olick's adversaries have been shrill in their criticism of his litigation practices.  For example in its Memorandum of Law in support of one of its sanctions motions, Aetna's counsel described Mr. Olick as

> a notorious "nuisance" litigator who has made a career out of reaching for excuses to file frivolous and harassing lawsuits in the hopes of extracting a monetary "nuisance settlement" from his latest target. He regularly employs vexatious and unduly burdensome litigation tactics in order to instigate excessive costs and prolong litigation as a further means of forcing a "payoff."

Aetna's Memorandum of Law In Support of Motion for Sanctions Pursuant to Fed. R. Civ. P. 9011 (AP Docket Entry No. 35).

While I do not endorse the tone and need not pass on the accuracy of the characterization of Mr. Olick, I observe that his frivolous request for allowance of a per diem liability of $21,200.00 as a cost of litigation is consistent with Aetna's harsh critique.

24

175.)[28]  The District Court dismissed that appeal due to Mr. Olick's failure to comply with the

rules of court.  See Order dated December 3, 2007 (AP Docket Entry No. 227) (dismissing case

due to appellant's failure to supply the court with the bankruptcy court decision, order or record).

Having denied Mr. Olick's request for taxation of the sanction itself as a cost, I will

similarly deny his request that the filing fee for his unsuccessful appeal of the Order imposing the

sanction be taxed as a cost.  My reason is the same as that expressed in n.23, supra.  The

importance of enforcing Rule 9011 outweighs any equitable basis there might be in this

proceeding to relieve Mr. Olick of his payment obligation or the costs he incurred in filing the

now dismissed appeal from the Order imposing the Rule 9011 sanction.

## 2.  photocopies  ($4,419.25) and depositions  ($9,003.84)

In opposition to Mr. Olick's request for expenses he incurred for photocopies and

deposition transcripts, Aetna argues that the request should be denied because:

1.  Mr. Olick has not demonstrated that these expenses were "necessarily obtained
for use in the case"[29] against Aetna (as opposed to Mr. Olick's case against the
Knights Defendants).

2.  To the extent that the costs were necessary, they were far more relevant to Mr.
Olick's claims against Knights Defendants and Mr. Olick has made no
reasonable attempt to allocate the costs fairly between Aetna and Knights

---

[28]    When Mr. Olick filed that appeal, he requested leave to proceed in forma pauperis
("IFP") and the Defendants objected.  After a contested hearing, I denied Mr. Olick's IFP request,
finding, inter alia, that his supporting affidavit "understated [his] income in calendar year 2007 and
was not filed in good faith."  See Order dated December 10, 2007, at 4 (AP Docket Entry No.
213).  Subsequently, Mr. Olick paid the fee.  See Unnumbered Docket Entry dated January 22,
2008.

[29]    See 28 U.S.C. §1920(4).

Defendants.

3. In any event, because virtually all of the costs were incurred after the Rule 68 Offer was made in November 2006, the court should exercise its discretion to deny Mr. Olick's request for costs for the unnecessary and unproductive litigation that followed.

While I do not agree entirely with Aetna's first argument, I fully agree with the second and the third arguments. This causes me to allow only a small portion of the more than $13,000.00 in photocopying and deposition transcript costs Mr. Olick incurred.

It is helpful to begin with an explanation of the relationship between Mr. Olick's claims against the Knights Defendants and his claims against Aetna.

In the AP, Mr. Olick contends that the Knights violated his contractual and statutory rights by their actions. To succeed on his claims, Mr. Olick must establish, inter alia, the reason(s) why the Knights terminated the contractual relationship.[30] Given the nature of Mr. Olick's claims, discovery regarding the nature and history of the parties' relationship was entirely proper. Certainly, to develop his case that the Knights' termination of its relationship with him violated his contractual and statutory rights, Mr. Olick needed to develop a clear factual chronology of the facts such as: Who acted on behalf of the Knights in connection with the termination of the contract? On what authority did such persons act? For what reasons did they act? What precise actions did they take? When did they take those actions? The foregoing description of the litigation and scope of discovery suggests that the issue of "when" the Knights terminated its contract with Mr. Olick was fully entwined with the issue of "why" the Knights

---

[30]    I use the general term "contractual relationship" because the Knights has not conceded that Mr. Olick was an employee, as opposed to an independent contractor, and the issue has yet to be decided in the ongoing litigation.

26

terminated the contract.

The need for a clear chronology also was critical to Mr. Olick's COBRA and ERISA claims against Aetna. The merits of those claims depended substantially on the date on which the Olick-Knights contract was terminated. Thus, any discovery Mr. Olick took regarding "why," "how" and "when" the contract was terminated was relevant to his claims against Aetna. For this reason, I am unwilling to conclude categorically that the substantial discovery Mr. Olick took was relevant only to the Knights Defendants and was unnecessary with respect to his claims against Aetna. I reject Aetna's suggestion that it should not be subject to taxation for any costs incurred for photocopies and depositions.

At the same time, however, it would be inequitable to lose sight of the relative roles that the Knights and Aetna played in this litigation. The locus of the AP litigation is the termination of the Olick-Knights contract. Undoubtedly, the termination of that contract had a ripple effect on Mr. Olick's health benefits, causing Aetna to take actions that Mr. Olick has asserted violated his statutory rights. But it appears that the Knights' role in the events that produced this litigation dwarfed Aetna's and that most of the critical issues center on the primary conduct of the Knights and its representatives. This is exemplified by the fact that eight (8) of the nine (9) depositions that Mr. Olick took were of individuals associated with the Knights and only one was of an Aetna employee.

Based on these circumstances, Aetna asserts that any taxable costs be apportioned among the Defendants, i.e., Aetna be taxed for only a fraction of the costs that are allowable under §1920. I agree.

The general rule is that liability for costs is joint and several when there are multiple

parties on the non-prevailing side.  E.g., Anderson v. Griffin, 397 F.3d 515, 522-23 (7th Cir.

2005);  Zenith Elec. Corp. v. WH-TV Broad. Corp., 2004 WL 1631676, at *2 (N.D. Ill. July 19,

2004); Hartung v. CAE Newnes, Inc., 2002 WL 31972394, at *2 (D. Or. July 2, 2002).

However, the court has the equitable discretion to apportion costs.  E.g. In re Paoli R.R. Yard

PCB Litig., 221 F.3d 449, 468-71 (3d Cir. 2000); Hartung, 2002 WL 31972394, at *2.  The

burden of justifying a departure from the general rule is on the non-prevailing party.  In re Paoli

R.R. Yard PCB Litig., 221 F.3d at 469;  Hartung, 2002 WL 31972394, at *2.  One circumstance

in which the apportionment of costs is justified is when the claims against the different non-

prevailing parties were "different in kind."  Zenith Elec. Corp., 2004 WL 1631676, at *2.

       In the exercise of my discretion, I conclude that this is an appropriate case for the

apportionment of costs based on the differing roles the Knights and Aetna played in the events

that produced this litigation and the significant differences in the nature of the claims Mr. Olick

asserted against the different parties.  Given the broader discretion that bankruptcy courts have

under Fed. R. Bankr. P. 7054, as compared to district courts under Fed. R. Civ. P. 54, the

exercise of discretion to apportion taxable costs is even further justified.

       The question, then, is what is a fair and equitable allocation of the costs between Aetna (a

party against whom a judgment has been entered under Fed. R. Bankr. P. 7068) and the Knights

Defendants (parties who continue to defend in this litigation)?  Before answering that question, I

will address Aetna's third argument because my resolution of that argument substantially reduces

the universe of costs at issue and simplifies the matter considerably.

       Mr. Olick sued Aetna to vindicate his entitlement to certain benefits he received through

his contract with the Knights, most notably healthcare coverage.[31]  The manner in which the

Knights terminated Mr. Olick's contract created an ambiguity regarding his termination date and,

with it, the date upon which the process of giving Mr. Olick a COBRA notice of the impending

termination of his benefits should have commenced.  A key issue in the case was whether Mr.

Olick received proper notice of the termination of his benefits.  At some point in time, the

contract was terminated and eventually, Mr. Olick received the statutory notice relating to his

benefits.  Reduced to its essence, Mr. Olick's claim against Aetna was designed primarily to

compel Aetna to maintain his health benefits for the finite period of time during which his

contractual status and the propriety of the statutory notices of termination of coverage were at

issue.

The Rule 68 Offer Aetna sent to Mr. Olick on November 29, 2006 offered coverage for all

of the healthcare expenses that Mr. Olick and his family were entitled to receive during the

contested period.  The Rule 7068 Offer Aetna sent on April 23, 2008, and which Mr. Olick

accepted, may be worded slightly differently than the Rule 68 Offer, but it offered the same

settlement terms.   I therefore, agree with Aetna that, in May 2008, Mr. Olick obtained no more in

settlement than he could have had in November 2006.

Based on the lack of any tangible benefit the additional achieved and the substantially

reduced role Aetna played in this litigation (as compared to the Knights Defendants), I can find no

rational reason why Mr. Olick was unwilling to resolve his differences with Aetna in November

2006.  This is not to say that every time a party rejects a Rule 68 Offer and achieves no better

---

[31]       I am aware that another contractual "benefit" was involved, _i.e._, a life insurance
policy.

result, all costs arising after the rejection of the offer should be denied. I suggest no such rule.

Indeed, there may be excellent reasons why an offer once rejected is accepted at a later date. The

most obvious examples are a (1) a candid reassessment of the strength of the case based on the

discovery obtained during the litigation, (2) litigation fatigue and (3) a change in circumstances

extrinsic to the litigation that alters the litigant's goals or needs. Here, however, Mr. Olick has

not made any showing nor provided any explanation why he doggedly pursued his claims against

Aetna even though Aetna had already offered him, through the Rule 68 Offer, all of the relief he

could reasonably have expected to obtain from Aetna.[32]

For these reasons, I conclude that Mr. Olick's insistence in continuing the litigation

against Aetna after November 28, 2006 was unproductive, wasteful and should not be rewarded

by the taxation of costs against Aetna. See In re Paoli R.R. Yard PCB Litig., 221 F.3d at 468 (in

determining taxation of costs, court may consider prevailing party's unclean hands, bad faith,

dilatory tactics, or failures to comply with process during course of litigation); Anderson v.

Unum Life Ins. Co. of America, 2007 WL 604278, at *14 & 16 (M.D. Ala. Feb. 22, 2007)

(attorney's fees and costs may be considered excessive based on consideration of results achieved

after prevailing party has rejected an offer of judgment under Rule 68).[33]

---

[32]    I have not lost sight of the fact that Mr. Olick sought per diem damages from
Aetna. However, that claim was dismissed by the district court in September 2006, more than
two (2) months before the Rule 68 Offer. See Olick v. Kearney, 451 F.Supp.2d at 673.

[33]    To be clear, Fed. R. Bankr. P. 7068 per se is not the basis of my decision. That
rule incorporates by reference Fed. R. Civ. P. 68. Rule 68 provides: (1) a party may serve an
offer of judgment on an opposing party more than ten (10) days before trial and (2) if the
judgment that the offeree finally obtains is not more favorable than an unaccepted offer of
judgment, the offeree must pay the costs incurred after the offer was made. If I were applying
Rule 68, the issue would be whether Mr. Olick is liable for Aetna's costs. Aetna has advised the

Taking into account that Mr. Olick was entitled to a reasonable period to consider acceptance of the November 29, 2006 Rule 68 Offer, I will deny Mr. Olick any costs incurred after December 4, 2006.

The universe of potentially taxable costs Mr. Olick incurred prior to December 4, 2006 consists of three (3) depositions transcripts ($2,412.50)[34] and photocopying expenses of $1,108.25.[35]

Based on the relatively limited role Aetna played in the discovery process, I will tax only 10% of the deposition costs against Aetna ($241.25). The photocopying expenses incurred for the period prior to December 4, 2006 facially appear to relate to pretrial matters involving Aetna, as opposed to the other Defendants. Therefore, I will allow that expense in full.

Thus, the total amount of costs taxed is $1,349.50. This represents approximately 3.36% of the excessive and outrageous amount Mr. Olick requested.

### 3.   prejudgment interest

Mr. Olick has also demanded prejudgment interest at the rate of 6% as a cost associated

---

court it will not seek to have Mr. Olick taxed in this court for the costs it incurred after the Rule 68 Offer was made in the District Court.

[34]     I am referring to the depositions of Kearney ($805.60), Jenkins ($720.10) and Warzynski ($886.80).

[35]     I derived this amount from the itemization set forth in Table 2, which was attached to the Cost Itemization Mr. Olick filed on June 6, 2008. I have totaled the photocopies listed from the "District Court Complaint" on page 1 of the Table, through the "Request for Clarification of Aetna's 12/4/2006 Offer of Judgment" on page 2 of the Table.

with the use of money to pay his litigation expenses for two years.  He cites no authority for this asserted entitlement.  I will deny that request.

As a general concept, prejudgment interest may be awarded, as a component of damages, if a party fails to pay a definite sum of money that is due as of a specific date.  In such circumstances, prejudgment interest may be recovered from the time that performance was due. Restatement (Second) of Contracts §354 (Westlaw 2008) (cited in Knop v. McMahan, 872 F.2d 1132, 1144 (3d Cir. 1989) (applying Pennsylvania law)).  In cases involving federal law, in the absence of an explicit congressional directive, the awarding of prejudgment interest is committed to the trial court's discretion.  See Skretvedt v. E.I. DuPont De Nemours, 372 F.3d 193 (3d Cir. 2004) (allowing prejudgment interest in ERISA actions under §502(a)(1)(B)).

Here, the issue is not whether Mr. Olick is entitled to prejudgment interest on a monetary recovery obtained under ERISA, but rather whether costs incurred in obtaining that recovery are taxable under Fed. R. Bankr. P. 7054.  I conclude that the concept of prejudgment interest appears is inapplicable in this context.  The costs Mr. Olick incurred were not due and owing; they were incurred during the course of the litigation.  Aetna's obligation to pay will arise only upon the entry of a court order taxing them.  It would be inappropriate to award interest on sums that were not liquidated and due and owing as of an earlier date.  See generally  Black Gold Coal Corp. v. Shawville Coal Co., 730 F.2d 941, 943 (3d Cir. 1984); (applying Pennsylvania law). Further, even if there are circumstances in which it may be appropriate to award prejudgment interest on costs taxed under Rule 7054, this is not such a case because the delay in the resolution of this matter is attributable to Mr. Olick, not Aetna.

## V.  CONCLUSION

For the reasons set forth above, costs will be taxed in favor of Mr. Olick and against

Aetna in the amount of $1,349.50.  An Order consistent with this Memorandum Opinion will be

entered.

Date:    **August 12, 2008**           _____

                                        **ERIC L. FRANK**
                                        **U.S. BANKRUPTCY JUDGE**


cc:     Thomas W. Olick
        4014 Crestview Avenue
        Easton, PA 18045

33